IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| WINSTON GITTENS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:25-cv-2408 (AJT/IDD) |
| JEFFREY CRAWFORD, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

Before the Court is Winston Gittens' ("Petitioner") Petition for Writ of Habeas Corpus, [Doc. No. 1] (the "Petition"), seeking release from Immigration and Customs Enforcement ("ICE") custody and arguing, *inter alia*, that his ongoing detention is unlawfully indefinite in violation of the Immigration and Nationality Act 8 U.S.C. §1231 and his fifth amendment substantive due process rights (Counts I, IV); (2); and that his prior Order of Release on Supervision was improperly revoked in violation of governing ICE regulations, which likewise violates his due process rights (Count II). Upon consideration of the Petition, the memoranda in support thereof and in opposition thereto [Doc. Nos. 11, 12], and for the reasons stated herein, the Petition is **GRANTED**.

## I.   BACKGROUND

Petitioner is a 58 year-old native of Trinidad and Tobago. [Petition] ¶¶ 11, 15. He entered the United States on May 12, 2006, after being extradited from Trinidad and Tobago to face criminal prosecution. *Id*. ¶ 16. He pled guilty and cooperated with the prosecution, and after serving 104 months of a 120-month sentence he was transferred to the custody of U.S. Immigration

1

and Customs Enforcement ("ICE").[1] *Id*. ¶¶ 17-18. He timely applied for deferral of removal to Trinidad and Tobago under Article III of the U.N. Convention Against Torture ("CAT"), which relief was awarded by an Immigration Judge on July 28, 2015, which resulted in an order of removal to Trinidad and Tobago being issued, but withheld. *Id*. ¶ 19. On July 30, 2015, Petitioner was released on an ICE order of supervision until, at a November 18, 2025 annual check-in at the ICE office in Chantilly, Virginia, ICE arrested him and transferred him to Farmville Detention Center, where he remains. *Id*. ¶ 21; [Doc. No. 11-2] ¶¶ 7-8.[2]

## II.    LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

8 U.S.C. §1231(a) requires the government to detain noncitizens during the "removal

---

[1] The record contains no further information on the nature or conduct of Petitioner's prior criminal proceedings.

[2] In support of his due process claim for deliberate indifference to medical needs, Petitioner has alleged that he has three medical needs which are going unmet in ICE custody: debilitating cataracts, edentulism (no teeth), and a hernia. [Petition] ¶¶ 22-23. He also alleges that he is due to undergo medical procedures for each of these three conditions in the coming months, without which he will endure significant pain and discomfort, and, in the case of his cataract, potential further degeneration of his vision. *Id*. Petitioner alleges, and Respondents do not meaningfully dispute, that he has not been provided specialist care and that his detention facility lacks the ability to provide that care. Id. ¶¶ 23, 40. However, because the Court awards release on other grounds, it is not necessary to reach this issue.

period," which is defined as the 90-day period during which "the Attorney General shall remove the alien from the United States." 8 U.S.C. §1231(a)(1)(A). That period commences upon one of three occasions: "(i) The date the order of removal becomes administratively final; (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B). Detention after the end of the removal period is governed by 8 U.S.C. § 1231(a)(6), which states that inadmissible aliens "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision."

In *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), the Supreme Court held that detention pursuant to Section 1231 is subject to an implied reasonableness standard whereby detention after six months of detention is presumptively unconstitutional and habeas relief is proper so long as the petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and the government does not rebut that showing with sufficient evidence. *Id.*

### III.   DISCUSSION

Petitioner first claims that his ongoing detention after the expiration of his removal period violates his fifth amendment due process rights and the INA, 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas* (Count I). He further brings an *Accardi* claim arguing that his Order of Supervision was revoked without observance of proper and required formalities and without the requisite findings being made, in violation of 8 C.F.R. § 241.4(l) (Count IV); *see also Accardi v.*

3

*Shaughnessy*, 347 U.S. 260 (1954).[3] He requests, *inter alia*, that the court: (1) enjoin Respondents from removing him from the United States; (2) order his immediate release; and/or (3) order Respondents to afford him a prompt and constitutionally adequate custody hearing.[4] [Doc. No. 1] at 12-13.

A) Jurisdiction under ongoing *D.V.D.* litigation

As an initial matter, Respondents submit that Petitioner's membership in the "*D.V.D.* class" should bar review of his claims. [Doc. No. 8] at 8–13 (citing *D.V.D. v. Department of Homeland Security,* 778 F. Supp. 3d 355, 2025 WL 1142968 (D. Mass. 2025)). Petitioner, in Reply, contends that *D.V.D.* challenges DHS's programmatic policies regarding removal procedures, not the fact of immigration detention during these procedures, and therefore does not bar jurisdiction. [Doc. No. 12] at 2.

In *D.V.D. v. U.S. Dep't of Homeland Sec.*, five noncitizens filed a class action for declaratory and injunctive relief against DHS and others for violating procedural due process by planning to remove noncitizens to a third country without first providing notice and an opportunity to apply for protection from removal to that country. 778 F. Supp. 3d 355 (D. Mass. 2025), On April 18, 2025, the District Court of Massachusetts granted the plaintiffs' class

---

[3] Petitioner invokes several different theories under Counts I, II, and IV of his claim, including that his detention without a meaningful custody review violates the Administrative Procedure Act (5 U.S.C. §§ 551–559) (Count II), and that "No Other Legitimate Basis for Detention Exists" (Count IV). However, like numerous other petitions recently before this Court, these counts collectively reduce to a *Zadvydas* claim, and it is not necessary to consider each of the corollary theories Petitioner alleges therein. Furthermore, because the Court finds that Petitioner is entitled to release based on his *Accardi* claim, it is not necessary to address Count III of the Petition, which alleges that his detention constitutes deliberate indifference to his medical needs in violation of his fifth amendment due process rights.

[4] Petitioner also requests costs of suit under the Equal Access to Justice Act ("EAJA"). [Doc. No. 7] at 15. The Court finds that Petitioner has no cognizable claim for recovery of costs because a habeas proceeding is not a "civil action" under the EAJA. *Obando Segura v. Garland*, 999 F.3d 190, 195 (4th Cir. 2021); *Luna Quispe v. Crawford*, 1:25-CV-1471-AJT-LRV, 2025 WL 2783799, at *6 (E.D. Va. Sept. 29, 2025).

certification and a preliminary injunction, requiring DHS to comply with certain procedures before initiating removal to a third country. *Id.* at 393–94. The class consists of:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*Id.* at 378. On June 23, 2025, the Supreme Court granted the Government's application to stay the preliminary injunction, which is currently on appeal before the First Circuit. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153, 222 L. Ed. 2d 1109 (2025).

As Petitioner notes, *D.V.D* does not address the issue relevant to Petitioner's claim; namely, the propriety of detention under 8 U.S.C. § 1231 pending effectuation of removal. [Doc. No. 12] at 2–3. And multiple district courts including courts in this district have rejected arguments identical to that raised by Respondents on this basis. *See Zavvar v. Scott,* No. CV 25-2104-TDC, 2025 WL 2592543, at *3 (D. Md. Sept. 8, 2025). The Court further concludes that there are compelling circumstances to consider Petitioner's claims. Petitioner brings claims concerning his ongoing detention and the revocation of an order of supervision under the due process clause and the INAthat are substantively different than those at issue in *D.V.D.*, which largely focused on what procedural due process protections noncitizens subjected to a third-country removal are entitled to. *D.V.D.*, 778 F. Supp. 3d at 387–90. As other courts have concluded, "to dismiss Petitioner's claims for [] relief at this time would effectively preclude [Petitioner] from the relief he seeks entirely and potentially foreclose any relief that he could be entitled to as part of the *D.V.D.* class if he is removed before the class-wide claims are resolved." *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025); *Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2841886 (D. Md. Oct. 7, 2025). Nor does the Supreme

5

Court's stay of the district court's preliminary injunction change this Court's disposition since, as other courts have observed, the Supreme Court has not offered any analysis of its stay, let alone opined on whether the stay was based on the merits or the procedural posture of the case. *Santamaria Orellana*, 2025 WL 2841886 at *11 ("[B]ased on the presently available guidance from the Supreme Court, there is an insufficient basis upon which to reach a conclusion on which aspects of D.V.D. the Supreme Court has rejected, whether they relate to the class certification, the due process claim, or otherwise."); *Nguyen v. Scott*, 796 F. Supp. 3d 703 (W.D. Wash. 2025) ("The Supreme Court did not decide *D.V.D.* on the merits, nor did it even necessarily rule on the class's likelihood of success on its due process and APA claims."). Therefore, the Court declines to dismiss Petitioner's claims on the grounds that he is a member of the class in the *D.V.D.* litigation.

B) Petitioner's *Zadvydas* claim (Counts I, II, and IV)

Petitioner argues that his detention is unlawfully indefinite because there is no reasonable probability of removal within the foreseeable future ([Doc. No. 1] ¶¶ 24-30), and that he is therefore entitled to release based on *Zadvydas*. Petitioner concedes, however, that he has not been detained for six months after his order of removal became administratively final,[5] but he argues, relying on cases from several other jurisdictions, that *Zadvydas* does not require him to have actually been in detention for six months, for two reasons: first, that Zadvydas merely established a rebuttable presumption that detention of less than six months was constitutional, and second, that that rebuttable presumption flatly does not apply to a noncitizen who, like Petitioner, is re-detained after a period of supervised release. *Id*. ¶ 26; [Doc. No. 12] at 4–5. Respondents counter that the

---

[5] Petitioner was released before that order became administratively final, and thus only his current detention of just over three months counts toward the *Zadvydas* analysis. [Doc. No. 11-2] ¶¶ 5-8.

six-month requirement is not rebuttable, and that only time spent in detention counts toward that requirement, citing to a case from this district which held similarly. [Doc. No. 11] at 14 (citing *Shaikh v. Lyons*, 1:25-cv-811, Doc. No. 12, Order at 3 (E.D. Va. June 23, 2025) (Alston, J.).

Regarding the first point, the Court disagrees with Petitioner's reading of *Zadvydas* as making detention under six months merely *presumptively* constitutional. That case held that:

> In order to limit the occasions when courts will need to make them [referring to "the difficult judgments" concerning when the length of a detention for the purposes of removal is unreasonable], we think it practically necessary to recognize some presumptively reasonable period of detention….. Congress previously doubted the constitutionality of detention for more than six months. Consequently, for the sake of uniform administration in the federal courts, we recognize that period [of six months]. After this six-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as 'the reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id*. at 700-701 [cleaned up].

As the Court has already ruled in another case, based on the Court's reading of *Zadvydas* , only time spent in actual detention for the purpose of removal counts towards satisfying the six month period adopted in *Zadvydas* as constitutionally reasonable. *See Maravilla Martinez v. Simon et al.,* No. 1:25-cv-01856 (E.D. Va. Feb. 20, 2026). Nor does the Court conclude, as Petitioner contends, that the six month requirement does not apply where an alien is re-detained after the expiration of the 90 day removal period defined in Section 1231. Neither Section 1231(a)(6) nor

7

its implementing regulations at 8 C.F.R. § 241.4(a) or (l) say anything about this, and the Court is not aware of any case from within the Fourth Circuit that supports Petitioner's contention.[6]

Accordingly, as Petitioner has failed to satisfy the six-month requirement, his claim under *Zadvydas* fails.

B) <u>Improper Revocation of Release under *Accardi*</u>

Petitioner also challenges the revocation of his order of supervision and his resulting detention on the grounds that, *inter alia*, Respondents violated their own regulations, specifically 8 C.F.R. § 241.4(l)(2), by issuing him a Notice revoking his Order of Supervision (the "Notice") which notice failed to provide an advance or contemporaneous explanation of the legal or factual basis for the "changed conditions' relied upon to revoke his order of supervision and justify his re-detention, and violated 8 C.F.R. § 241.4(l)(1) by failing to offer him an informal interview to respond to the reason for revocation. *See Accardi*, 347 U.S. 260 (1954) (holding that an agency violated due process by violating its own regulations). Petitioner's Notice is in the record, having been submitted as an exhibit to Respondents' Opposition. [Doc. No. 11-3].

Section 241.4(l)(1) provides that "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to [] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(2) provides that "The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release" and that "[a] district director may also revoke release of an alien when, in the district

---

[6] Despite Plaintiffs' contention, *Zavvar* does not support their point. 2025 WL 2592543, at *16. Nevertheless, the Court recognizes that the length of time that has passed between Petitioner's initial Section 1231 detention and his subsequent detention for the purposes of removal after the expiration of his 90 day removal period under Section 1231 may be considered in assessing whether further detention is constitutionally reasonable after more than a total of six months in detention for the purposes of removal. *See, e.g., Maravilla Martinez,* No. 1:25-cv-01856 at 5-7.

director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner."

Petitioner alleges that Respondents "re-detain[ed] Mr. Gittens without conducting the required custody review, without providing notice or an informal interview, and without any individualized determination of removability." [Doc. No. 1] ¶ 34. The record indicates that not only is Petitioner's Notice not expressly based on a finding that revocation is in the public interest or that "circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner," as required by section 241.4(l)(2), but it also appears to have been signed by an official not expressly authorized in section 241.4(l)(2) (it was instead signed by an Assistant Field Office Director). [Doc. No. 11-3]. And while the Notice contains a conclusory statement that there has been a change in circumstances, the only change suggested is that "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case," a claim the Respondents have not been able to substantiate in opposing the Petition. [Doc. No. 11-3].

Respondents contend in opposing Petitioner's *Accardi* claim that ICE did not violate its own regulations because those regulations grant ICE significant discretion in making such revocations. [Doc. No. 11] at 17–18 (*citing Tanha v. Warden*, 2025 WL 2062181, at *5 (D. Md. July 22, 2025)). However, courts have repeatedly granted *Accardi* relief to detained aliens where the Notice of Revocation either lacked the requisite factual findings, was made by an official who lacked authority to do so, or had some other material deficiency under Section 241.4(l). *See Juarez Villatoro v. Noem*, 1:25-cv-2359, AJT-WEF [Doc. No. 18] (E.D. Va. Jan. 6, 2026)); *see also Maravilla Martinez v. Simon, et al.*, No. 1:25-cv-01856-AJT-WEF (E.D. Va. Feb. 20, 2026); *see also Roble*, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("Providing a notice that simply

9

recites the language of the regulation does not satisfy the Government's obligation to provide the reasons why Petitioner's Order of Supervision was revoked") (cleaned up).  Accordingly, the Court concludes that Petitioner has made the required showing of a due process violation under the *Accardi* doctrine based on the multiple deficiencies in his Notice of Revocation.[7]

Having found that Petitioner's *Accardi* claim is meritorious, the Court proceeds to the issue of remedy. Most generally, *Accardi* stands for the proposition that an agency's actions in violation of its own regulations are invalid, and accordingly, relief under this type of claim should generally be the vacatur of the challenged agency action. As the challenged action here is revocation of an order of release, the corresponding appropriate relief is to order Petitioner's release, as multiple courts have done on analogous facts. *See, e.g. Santamaria Orellana*, 2025 WL 2444087, at *8 (granting habeas petition for revocation of order of supervision in violation of §241.4(l)); *see also McSweeney v. Warden of Otay Mesa Det. Facility*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376, at *7 (S.D. Cal. Oct. 24, 2025) ("The Court's research indicates that every district court, except two, to consider the issue has determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered")(internal quotations omitted).

## IV.    CONCLUSION

As detailed above, Petitioner's Order of Release on Supervision was revoked without Respondents having made the requisite factual findings and without Petitioner having been

---

[7] Respondents also argue that any *Accardi* breach was cured when on December 31, 2025, an ICE Field Office Director responsible for the Washington metropolitan area executed a new Notice of Revocation of Release with respect to Petitioner. [Opp.] at 18. However, no such renewed Notice was attached or provided to the Court and the Court cannot therefore determine its sufficiency based on the above representation.  Even if a renewed Notice existed and were reflected in the record, this same type of "cure" has recently been held insufficient to bar *Accardi* relief. *See Juarez Villatoro v. Noem*, 1:25-cv-2359, AJT-WEF [Doc. No. 18] (E.D. Va. Jan. 6, 2026)).

afforded adequate notice or an informal interview regarding the changed circumstances purportedly justifying his re-detention, in violation of his due process rights and *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). His continued detention is therefore unconstitutional and is unlawful under *Accardi.* The Court has jurisdiction under 28 U.S.C. § 2241 to address Petitioner's detention.[8]

For all the above reasons, the Petition is granted, and it is hereby

**ORDERED** that both U.S. Immigration and Customs Enforcement's November 18, 2025 and December 30, 2025 revocations of release be, and the same hereby are, **VACATED**; and it is further

**ORDERED** that ICE shall release Petitioner from detention immediately and place him under his prior Order of Supervision; and it is further

**ORDERED** that Respondents are **ENJOINED** from re-detaining the Petitioner based on a revocation of his Order of Supervision without first complying in all respects with the applicable regulations concerning the revocation of his Order of Supervision, as identified herein, including stating in the Notice the specific factual basis for any claim of "change in circumstances," and if the stated change in circumstances relates to a significant likelihood of removal in the reasonably foreseeable future, the factual basis for that claimed change, including what efforts have been made to locate a country for removal, the name of the country to which Petitioner will be removed and the authorizations received from that country for that removal.

All other claims and forms of relief requested in the Petition are denied without prejudice.

---

[8] *See Luna Quispe v. Crawford,* No. 1:25-CV-1471, 2025 WL 2783799, at *2–3 (E.D. Va. Sept. 29, 2025) (concluding that neither 8 U.S.C. §§ 1252(b)(9) nor 1252(g) divests this Court of jurisdiction to review the legality of a habeas petitioner's detention),

The Clerk is directed to send copies of this Order to all counsel of record.


Alexandria, Virginia
February 25, 2026

Anthony J. Trenga
Senior United States District Judge